### HARRIS v. GEORGE E. ELDRIDGE, Inc.

### No. 1523.

Court of Appeal of Louisiana. First Circuit.
Dec. 9, 1935.

ELLIOTT, Judge.

Leslie Harris brought suit to recover of George E. Eldridge, Inc., the sum of $2,925.60 as damages on account of personal injuries which he claims to have received due to the negligent and careless acts of defendant's servant, Anderson Powell, in letting fall and strike him a block of ice, at a time when he was unaware that the ice would be slided toward him, and after he had requested defendant's servant to hold the ice. At the time the ice was being delivered, the defendant was operating under the name of United Ice Co., Inc., and the cause of action arose while it was

operating under that name. But soon afterwards its name was changed to that of George E. Eldridge, Inc., and the suit was brought against it under the latter name. The defendant, George E. Eldridge, Inc., appeared through a firm of attorneys and answering plaintiff's petition, denied the negligent, careless act alleged against its servant, put at issue plaintiff's right to recover under all the grounds alleged in his petition, and alleged alternatively that if plaintiff was injured, it was due to his own fault. After the case had been thus put at issue, George E. Eldridge, Inc., was put into the hands of a receiver. The receiver, upon being made a party defendant, appeared, through a different attorney and filed another answer. This last answer is different from the first, in that it sets up that Anderson Powell was not authorized to solicit nor accept help in delivering ice, and that if plaintiff was injured as claimed by him, which the receiver denied, defendant was not liable on that account.

Plaintiff's suit as thus put at issue was heard by and submitted to Judge George K. Favrot. While the case was pending before Judge Favrot and without having been acted on, he departed this life, and Judge James D. Womack was appointed his successor. The case was then submitted to Judge Womack on briefs without argument, and Judge Womack rendered judgment rejecting plaintiff's demand. The plaintiff has appealed.

M. C. Webb operates a filling station in Baton Rouge from which he sells gasoline and motor oil and fixes automobile tires, etc. He also sells ice, and his ice business is conducted from the same station from which he sells gasoline, etc. The ice is kept in a large icebox, distant eight or ten feet from his gasoline pumps. M. C. Webb was absent on July 10, 1932, and on that day he left his business in charge of his brother, J. L. Webb. During the day J. L. Webb ordered from United Ice Co., Inc., four blocks of ice, each weighing 300 pounds. The defendant sent the ice on a truck driven by Anderson Powell. Anderson Powell was sent alone and without anybody to help him unload the blocks of ice. The age of the driver is not stated, but he says himself that when he last weighed he weighed 160 pounds, and the evidence shows that he had been driving a truck and delivering ice for defendant for several years. We take it from this that Powell was a full-grown man physically able to unload 300-pound blocks of ice as well as any other able-bodied man of average strength could do without help. The defendant admits that it was its duty to place the blocks of ice in the icebox. Upon reaching Webb's place of business, where the plaintiff was employed as a helper, Powell backed his truck up to the door of the icebox, which was adjacent to the filling station, placed one end of a strong plank about a foot wide and five or six feet long in the door of the icebox and the other on the end of his truck. Plaintiff testifies that Powell, after backing his truck up to the door of the icebox and placing in position the plank necessary for sliding the blocks from the truck into the door of the icebox, came over to where he was at work serving a customer, a distance of say 12 or 15 feet from his truck, and asked plaintiff to assist him in unloading the ice. This is denied by Powell, but affirmed by Harris. Harris says he told Powell that as soon as he got through with the service in which he was engaged he would come and help him as requested. Powell testified that he did not go over and ask Harris to assist him in unloading the ice; that Harris came to the place where he was prepared to unload, unsolicited and voluntarily engaged in the work of helping him unload the ice. Whether he went unsolicited and voluntarily, or pursuant to request, the evidence shows that Harris went and got into the icebox and Powell got on his truck and the unloading commenced. Powell would take hold of one of the 300-pound blocks with a pair of tongs and slide the block, guiding it along the plank until it got into the door of the icebox. Harris, who was inside the icebox, then took hold of it with another pair of tongs and arranged it inside the box. Three blocks were received and placed in the box. There was a drop from the truck to the floor of the icebox which we think the evidence shows was about two feet, and the length of the slide was about three feet. When it came time to unload the fourth and last block, plaintiff testifies that he found it necessary to move out of the way a 100-pound block of ice near the door, and called out in a loud voice to Powell to hold the fourth block. Then, while he was crouched down trying to move the 100-pound block out of the way, Powell, without notice to him, and disregarding his request, slid the 300-pound block of ice down on him, striking him on his right leg and knee, inflicting serious and permanent injury, causing him prolonged pain and suffering and causing

him expenses for medical treatment and drug store supplies.

On the trial of the case, the plaintiff objected to the reception of evidence, the purpose of which was to show that defendant's servant Powell had no authority to solicit and accept assistance in unloading this ice, on the ground that it changed the issues presented by the first answer. The objection was overruled, and we think properly so. Plaintiff did not move to strike out the averment and had the case set down for trial on the issues as presented by both answers more than once before the case was actually heard. The pleading, however, was a special defense and one which the defendant, its officers, and agents had to establish by a preponderance of the proof. It was a defense peculiarly within the knowledge of defendant, its officers and agents, and not easily contradicted by a plaintiff without knowledge on the subject. It is a defense which must be established by the defendant with reasonable certainty. Greenleaf on Evidence, vol. 1, subject, The Burden of Proof, § 79, p. 92; Jones on Evidence, subject, Burden of Proof, § 181, p. 211.

Mr. Eldridge, president of .United Ice Co., Inc., and of George E. Eldridge, Inc., in response to questions asked him by counsel for defendant stated he had given instructions to drivers to not accept the assistance of third persons in performing any of their duties. We quote part of his testimony as follows:

"Q. Have you ever instructed Anderson Powell after he was employed by you relative to soliciting the aid of any third party in the performance of· any of his duties? A. I have instructed the drivers not to allow anyone to assist them.

"Q. If he did do this, which the answer denies, was it done with the knowledge and consent or approval of any officer of this corporation? A. It was not, if true."

He further testified that he had constructed the icebox in question and was asked if a 100-pound block of ice in the corner of the box would have to be moved out of the way in order to admit the last 300-pound block into the box. The testimony was irrelevant and proved nothing that can have bearing, because the plaintiff and J. L. Webb, say that the 100-pound block which plaintiff sought to move out of the way was not in the corner, but in the doorway, and interfered with the receiving of the 300-pound block which remained to be unloaded.

It is not sure from the testimony of Mr. Eldridge whether the instructions mentioned as having been given to drivers had been given while the business was being operated in the name of United Ice Co., Inc., or whether it was before or after the accident in question. Not only that, but the statement, "I have instructed the drivers not to allow anyone to assist them," is very general. It is not sure from his answer that the matter was expressly mentioned to Powell nor that Powell understood therefrom·that he was forbidden to solicit and accept help, necessary to expedite the unloading of blocks of ice weighing 300 pounds, when with a man to help him it could be done expeditiously and without difficulty. Mr. Eldridge testified that he had several trucks engaged in delivering ice; on some of them he sent two men; on others one. That one man could deliver blocks weighing 300 pounds and that he sent Powell alone with this ice for Webb. We quote him as follows:

"Q. And· you sent one employee to unload that ice? A. Yes, because one is all that is necessary.

"Q. When you state that you furnished no boards to your one-man operated trucks to unload these 300 lb. blocks of ice, how do you expect them to do that? A. We are not expected to unload 300 lb. blocks of ice; we usually cut it in one hundreds and put it in, or else just slide it off into the box if they are on the proper level.

"Q. You do not consider it possible for any one man to unload 300 lb. blocks of ice and place them in .auxiliary box? A. Yes.

"Q. You consider that possible? A. Yes, easily.

"Q. Without the use of a plank? A. No, not without the use of a plank in this particular case, but on some of them we could.

"Q. You would have to use a plank in order to unload the 300 lb. blocks? A. Yes."

The testimony of Mr. Eldridge indicates, when all he said is taken into account, that blocks of 300 pounds each to be unloaded by one man were usually cut into hundreds, and by which we understand him to mean blocks of 100 pounds each. If blocks weighed 300 pounds each and one man only was sent with the truck, it seems from his testimony that the driver was expected

to slide the blocks off of the truck into the icebox if the truck and the box were on a proper level. In this instance his instructions even if timely given which as we have said does not appear it may be questioned if his instructions should be applied to the Webb icebox because the bottom of the truck was not on a level with the bottom of the icebox. The testimony indicates that the floor of the truck must have been about two feet higher than that of the icebox, and the length of the slide must have been close to three feet, making it inconvenient for one man to do the work and requiring considerably more time than the work required with one man in the truck sliding the ice down the plank into the door of the icebox, and another in the box, pulling the blocks as they arrived, out of each others way. Anderson Powell testified that Mr. Eldridge did not give him permission to ask people to help him put the ice in a unit; that he was always to attend to his own work, but he, like Eldridge, does not say whether this was told him before or after the accident in question. He further testified that he did not ask plaintiff to help him on this occasion, but that plaintiff came and assisted him, without being requested to do so; that he, Powell, merely accepted plaintiff's voluntary help. That he had previously unloaded 300-pound blocks at this box, and that plaintiff had voluntarily come and helped him do it. He was asked:

"Q. And you unloaded these 300 lb. blocks yourself? A. If I didn't get anybody to help me I unloaded them."

This answer indicates that, if sent alone with 300-pound blocks, he obtained help if he could. The witness explained that he could have unloaded the 300-pound blocks at this box, by letting the blocks slide from the truck, down the plank, into the door of the icebox one at a time and then getting out of his truck and going into the box, each time a block was slid into it and shoving it out of the way. The above is the way we understand he would have done, else each block would have stopped the other from entering the icebox door.

Defendant's first answer, filed November 14, 1932, does not contain the defense we have been considering. The answer of the receiver filed May 24, 1933, about six months later, contains the defense mentioned. In the absence of any explanation as to how this came about, it seems a reasonable indication, that at the time of first answering, it was not aware that instructions of the kind had been given to Powell previous to the accident, otherwise the fact would have been communicated to its first counsel with the result that it would have appeared in its first answer.

. The defense is weak, unsatisfactory and unconvincing.

The testimony on the subject and the accompanying facts and circumstances convinces us that defendant's servant did have authority implied, if not express, to solicit and accept plaintiff's help in unloading these 300-pound blocks of ice at the Webb filling station and icebox.

The defense is overruled. And the preponderance of the testimony and that which we are satisfied is most credible and worthy of belief satisfies us that defendant's servant did request plaintiff to assist him unload the ice. The plaintiff, Harris, is corroborated in the matter by J. L. Webb. We are satisfied that Powell waited until Harris came before he started to unload; that when Harris came he told him to get in the box, as stated by J. L. Webb; that Harris did so and Powell got into the truck. That from the truck he slid three blocks into the door of the icebox, which were received and arranged in the box by Harris. That he found it necessary, after the third block had been arranged, to move a one hundred-pound block out of the way before the fourth block came in. That he requested Powell to hold the fourth block, and that Powell heard his request. Powell testifies that he did not hear it. We are satisfied that Powell testified untruly when he said that he did not request Harris to help him unload and waited for him to do so. Powell's testimony that he did not hear Harris request him to hold the fourth block is not believed. J. L. Webb testifies that Powell jumped off his truck and said, evidently addressing Mr. Webb: "This block of ice slipped in on Leslie." This tends, we think, to indicate that Powell knew at once that Harris had been hurt as a result of his negligent and careless act in sliding the ice down on him after his request to hold it. But suppose the request to have been made and not to have been heard, the evidence shows that Powell could see inside the door of the icebox, and if attentive to what he was doing, he was bound to have seen Harris just inside moving the one hundred-pound block out of the way, and knew that the 300-pound block ought not to be dropped down on him while he was engaged as stated. We are satisfied that Powell dropped the 300-pound block on plaintiff and injured him at a time when

498

plaintiff was unaware that it was coming; that it was done as the result of negligence and carelessness on the part of Powell, after he had been requested to hold it, and that the defendant is responsible to Harris in damages on said account.

■ Having reached this conclusion, it follows that the judgment appealed from is contrary to the law and the evidence, and erroneous, and will for that reason be reversed, and judgment rendered in favor of the plaintiff for such damages as we think he should recover. According to Dr. Watson, plaintiff's injury is to the leg and knee. It was very serious; the leg bone was injured. Dr. Watson was not sure but that the knee received a permanent injury; there was much pain and suffering, but we incline to the opinion that permanent injury has not resulted. There has been expense, such as doctor's bills, loss of wages, loss of employment. Since the injury, plaintiff has not been able to get steady work, but is reduced to getting such light jobs as he can do.

We have reached the conclusion that $1,000 should be recovered by the plaintiff.

For these reasons, the judgment appealed from is annulled, avoided, and set aside, and it is now ordered, adjudged, and decreed that the plaintiff, Leslie Harris, have and recover against George E. Eldridge, Inc., now named United Ice Co., Inc., damages in the sum of $1,000, with legal interest thereon from judicial demand until paid. Defendant appellee to pay the cost in both courts.